UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CRUTCHFIELD PROPERTIES, LLLP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GLOBAL ENVIROTECH, LLC, et al., )<br>)<br>Defendants. ) | CIVIL ACTION FILE<br>NO. 4:17-CV-00076-WMR |

### PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY FROM ALAN F. WESTON, PH.D.

Plaintiff Crutchfield Properties, LLLP ("Crutchfield" or "Plaintiff") files this brief in support of its Motion to Exclude Certain Testimony from Alan F. Weston, Ph.D. Dr. Weston is a chemist and "Director of Remedial Technology" at the consulting firm GHD and has been identified by the Defendants pursuant to Fed. R. Civ. P. 26(a)(2) as a witness that they may use to present evidence under Fed. R. Civ. P. 702.

As explained in detail below, Dr. Weston readily admits that he lacks any education, training, or experience in fire investigations or in determining the cause and origin of a fire and thus he should be excluded from offering testimony regarding causation of the November 14, 2015 fire at the Old Barwick Mill in

Lafayette, Georgia (the "OBM"). Moreover, Dr. Weston also admitted that he was not engaged in this matter until April 2018, prepared his expert report *without* ever visiting the OBM, and did not visit the OBM until June 2018—close to *three years after* the November 2015 fire at the OBM and *after* the OBM Site had been completely cleaned up by Crutchfield. Thus, those admissions provide another basis to exclude his testimony.

Similarly, Dr. Weston also should be excluded from offering "expert" testimony on what industrial waste was present at the OBM at the time of the fire because that is a fact issue to be resolved by the jury and because the Court based on witness testimony and defense counsel stipulated during Dr. Weston's deposition that Dr. Weston would *not* be offered as an expert witness on that issue.

## ARGUMENT AND CITATION OF AUTHORITY

**A.    The Standard for the Admissibility of Expert Testimony Under Fed. R. Evid. 702.**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The district court performs a "gatekeeping" function regarding the admissibility of expert scientific and technical evidence. *U.S. v. Frazer*, 387 F.3d 1244, 1260 (11th Cir. 2004). Under Rule 702, the proponent of expert testimony has the burden of showing that the opinion testimony complies with each requirement of Rule 702. *E.g. Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005); *Hendrix v. Evenflow Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

In evaluating whether a proposed expert is competent to testify under Federal Rule of Evidence 702, a court must "examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome Inc.*, 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002). In *U.S. v. Paul*, 175 F.3d 906 (11th Cir. 1999), the plaintiff sought to introduce expert testimony from a law professor regarding handwriting analysis. In affirming the district court's exclusion of the proposed testimony, the court explained that, although the law professor had reviewed literature regarding handwriting analysis and authored a law review article relating to handwriting analysis, the law professor had no formal training in the field, had not been employed in the field,

was a not a member of any relevant professional organizations, and thus "[h]is skill, experience, training and education as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis *than a lay person who read the same articles*." *Id.* at 912 (emphasis added).

Under the applicable standard, Dr. Weston cannot offer expert testimony on the cause of the OBM fire or on what industrial waste was present at the OBM at the time of the fire.

**B.     Dr. Weston Admits That He Lacks the Training, Education, and Expertise to Opine on the Cause of the OBM Fire.**

During his June 2018 deposition, Dr. Weston readily admitted that (1) he has no training or education in regard to determining the cause and origin of a fire, (2) he has never been qualified by a court or other tribunal as an expert on fire investigations or in determining the cause or origin of a fire, (3) he does not consider himself to be an expert in fire investigations, and (4) prior to this matter, he has never been retained by any client to serve as an expert on fire investigations or on the cause and origin of a fire:

> Q:  Going back to your training and experience, have you ever received any training or education in regard to determining the cause and origin of the fire?
>
> A:  No.

4

> Q: Do you consider yourself to be a cause and origin expert in any way?
>
> A: In regards to fire investigation, I would not consider myself in any way an expert on fire investigations; …..
>
> . . .
>
> Q: Have you ever been qualified by a court or a judge or any type of tribunal as an expert on fire investigation?
>
> A: No.
>
> Q: Have you ever been qualified by a court, judge, or other tribunal as an expert in regard to determining the cause and origin of a fire?
>
> A: No.
>
> Q: And have you ever been retained by any client that was involved in some type of dispute or litigation as an expert on fire investigations or cause and origin in determining of a fire?
>
> A: No. Almost, but not.

(6/27/18 Deposition of Alan F. Weston ("Weston Dep.") at pp. 68:22-69:3 & 212:1-13, Exhibit "1" hereto).

In addition to his complete lack of training, education, and expertise in fire investigations, Dr. Weston also admitted that he was not engaged in this matter until April 2018, prepared his expert report *without* ever visiting the OBM, and did not visit the OBM until June 2018—close to *three years after* the November 2015 fire at the OBM and *after* the OBM Site had been completely cleaned up by Crutchfield. (*Id.* at pp. 79:13-80:16 & 90:21-91:6).

5

Accordingly, Dr. Weston (i) completely lacks the qualifications to provide expert opinions to a jury on causation of the November 2015 fire at the OBM, and (ii) failed to conduct any post-fire investigation of the OBM Site prior to cleanup, and thus he should be excluded from offering any expert opinions at trial regarding the cause of the November 2015 fire at the OBM.

C. **Defense Counsel Stipulated That Dr. Weston Cannot and Will Not Offer an "Expert Opinion" on What Industrial Waste Was Stored at the OBM.**

Although Dr. Weston acknowledged that it is for a jury and the Court to evaluate witnesses' testimony and other evidence to determine the industrial waste that was present at the OBM at the time of the November 14, 2015 fire, he also repeatedly asserted during his deposition that he had reviewed the deposition testimony of numerous witnesses, evaluated the credibility of the witnesses, and thus formed an "expert" opinion on what waste materials were stored at the OBM at the time of the November 14, 2015 fire. (Weston Dep. at pp. 44:9-19, 99:4-15, 126:25-127:2, Ex. 1 hereto). Given that there is no basis for a party to attempt to utilize an expert witness to make witness credibility determinations and purport to give an "expert" opinion on a purely factual issue such as what industrial waste was present at the OBM, Plaintiff's counsel engaged in the following soliloquy with the Defendants' counsel during Dr. Weston's deposition:

> MR. THOMPSON: Jimmy, are you offering Dr. Weston as an expert witness on what materials were stored at the Old Barwick Mill at the time of the fire?
>
> MR. KIRKLAND: No.

(Weston Dep. at p. 100:12-16, Ex. 1 hereto).

Based upon such stipulation and based upon the fact that it is completely improper for Defendants to attempt to have Dr. Weston offer an "expert opinion" on the factual issue of what industrial waste was stored at the OBM, Crutchfield requests that the Court exclude Dr. Weston from attempting to provide any testimony regarding what industrial waste was present at the OBM at the time of the November 2015 fire.[1]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that, pursuant to Fed. R. Evid. 702 and controlling Eleventh Circuit precedent and the standards establish by the Supreme Court in *Daubert*, the Court exclude Dr. Weston from providing any testimony regarding (1) causation of the November 2015 fire at the

---

[1] As explained above, Dr. Weston did not visit the OBM until June 2018—close to three years after the November 2015 and after the Site had been cleaned up by Crutchfield—and thus Dr. Weston also cannot provide any factual testimony regarding the waste present at the OBM. (Ex. 1 hereto at pp. 79:13-80: 16 & 90:21-91:6)

OBM, and (2) which waste materials were present at the OBM at the time of the November 2015 fire.

Respectfully submitted this 17th day of September, 2019.

SMITH, GAMBRELL & RUSSELL, LLP

*s/Andrew M. Thompson*
Andrew M. Thompson
Georgia Bar No. 707319
Stephen E. O'Day
Georgia Bar No. 549337
Vickie C. Rusek
Georgia Bar No. 487697
*Counsel for Plaintiff Crutchfield Properties, LLLP*

1230 Peachtree Street N.E.
Suite 3100, Promenade
Atlanta, Georgia  30309-3592
Telephone: (404) 815-3701
Fax: (404) 685-7001
Email: athompson@sgrlaw.com

## CERTIFICATE OF COUNSEL

Pursuant to Local Rule 7.1(D), counsel for Plaintiff certifies that the font and point size, Times New Roman 14 point, used in this document, comply with Local Rule 5.1(B).

/s/ Andrew M. Thompson
Andrew M. Thompson
Georgia Bar No. 707319

*Attorney for Plaintiff Crutchfield Properties, LLLP*